United States v. Mercado Thank you, Your Honor. I'm Assistant United States Attorney Edward Chang. I represented the government in the supervised release proceedings below, but not in the underlying criminal case. Last December, in an otherwise routine initial appearance proceeding for the alleged violation of supervised release, the district judge raised sua sponte the question of whether district courts have legal authority to detain a defendant pending revocation proceedings. This is a question that has never before been asked in the approximately 40 years since supervised release came into effect with the Sentencing Reform Act of 1984. After hearing briefing, the district court ruled and determined that it did not have legal authority for detention pending revocation hearing, and this was legal error. The district court essentially determined that, according to the Anti-Detention Act, there was a requirement for statutory authorization for such detention, and held that two provisions cited by the government did not provide that necessary statutory authorization. Now, even assuming that the Anti-Detention Act applies, the district court erred as a matter of law in determining that those two statutory provisions did not provide the necessary authorization. The first statutory provision is Section 3583E3 of the Sentencing Reform Act, which incorporated Rule 32.1, or in more of the languages, pursuant to the federal rules of criminal procedure, and the pertinent federal rule would have been Rule 32.1. Rule 32.1, the two times that statute was enacted, referring to 3583E3, the two times that Congress enacted that statute, Rule 32.1, clearly envisioned detention pending a revocation hearing, unless certain conditions were met and the defendant was able to establish that he could be released. That authorization was incorporated by Congress directly when it said that, pursuant to the federal rules of criminal procedure, the district court should proceed. And that is sufficiently clear authorization to allow district courts... If you didn't have the incorporation argument, the rule itself wouldn't be able to provide the authority, would it? So this is a very interesting question that we looked at very closely, Your Honor. And we didn't... So there's two parts to that answer. Obviously, you know, that's not our primary argument. Our argument with respect to Rule 32.1 is that it buttresses the government's arguments on the two statutory provisions. But actually, the argument with respect to... That's like an interpretive matter, right? As an interpretive matter, in terms of understanding 3583 and 3143. But to more directly answer the court's question, I think that the correct answer is that Rule 32.1 actually should have independent authority. Because the... Not a Rules Enabling Act problem? No, Your Honor. It's not a Rules Enabling Act problem because the default rule is that when a defendant is under judicial supervision, he does not have an entitlement to be released on bail unless there's statutory authorization for bail. And I'll cite to the court the case of Pisano v. Schillinger, which is a Wyoming Supreme Court case, which surveyed other jurisdictions and determined that the majority rule is in the absence of statutory authority for bail, a defendant who's been charged with violating parole because of state case is not entitled to be released. So the default rule is you're not entitled to release. I'm sorry. When you say the default rule, that rule based on a statute, on a case, what's where are you getting the default from, I guess? So the case... So I would say two things, Your Honor. If you look at what the government cited and described in terms of parole revocation prior to the sentencing reform act, prior to the Bail Reform Act of 1984, this court, the Second Circuit, repeatedly held that absent unusual circumstances, bail is not available for defendants who are alleged to have been violating supervision. But the default rule I'm referring to was what the Wyoming Supreme Court found in looking at jurisdictions where there's no statute authorizing bail. And in that case, the Wyoming Supreme Court said that when a defendant under judicial supervision commits a violation of that supervision, he's not entitled to release. Your Honor, I still have two minutes left. The other statute that we relied on was obviously 3143. That statute provides that a defendant who's been convicted of an offense and is awaiting execution of his sentence can be subject to pretrial detention. And in this case, the district court clearly, its reasoning was clearly in opposition to the established precedence of this court and the Supreme Court because it relied heavily on this argument that double jeopardy somehow prevented it from considering the offense to being the underlying criminal offense. That just runs headlong into Peguero. It runs headlong into Peguero. It's completely incorrect, Your Honor. I think actually just last Friday in the Esteros decision, that was a case that addressed supervised release and what courts can consider. I think the Supreme Court quite clearly says the opposite as well. What about this issue of the word awaiting, though? It's argued at least that it seems unusual to use awaiting execution of the sentence when all that's happened is the filing of a violation petition. I think one of the arguments that is being made here is that there's been no adjudication, that there's been a violation. The argument would be strange to say someone's awaiting execution of that portion of their sentence. What's your response to that? The sentence, the question, and I think this is where the district court and Mercado gets it wrong, is that the sentence that's imposed for the underlying criminal conviction encompasses the term of imprisonment, but it also encompasses supervised release. I understand that. We discussed that at length in Pueblo. You're not arguing that in the entirety of the supervision, someone is awaiting execution, because supervised release is part of the initial sentence. The government's argument isn't that over that entire period, someone is awaiting execution, right? I think I saw that in your brief. That's not your position. That's correct, Your Honor. So your position is something changes when, even though you're not awaiting execution of the sentence, when you're on supervised release, once a petition has been filed, now you're awaiting execution, and your argument is, well, no, nothing's happened because something's been filed. Do you have to wait for an adjudication? And it may be an argument that once there's an adjudication, now you're awaiting execution on the supervised release violation. So why should that be the more narrower interpretation? Because what is going on, actually, in real terms right now in the district court below, is Mr. Mercado is waiting for the supervised release proceedings to go forward, for some determination in a revocation hearing as to whether he actually committed that violation. And that mechanism, that structure of what happens in supervised release, when an allegation of a violation is filed, that's what he's awaiting. So in your view, his sentence was not fully executed when he was sentenced, and that it's being, he's awaiting further execution of his sentence that's triggered by the filing of the violation? Exactly, that's correct. So what is the point, then, of where is finality? When was his sentence final? So this was an argument that was made by the district court as well. But the sentence is final, and I think the Supreme Court has said, and this court has said, that a sentence being final doesn't mean that the defendant necessarily knows the exact extent of the incarceration that he's going to face because of the possibility that supervised release might be revoked. His sentence is final. His sentence was the 10 years imprisonment, the five- Right, so I understand that part of it, but if his sentence was final when he was sentenced, even without knowing the exact term he was going to serve, what does it mean now if the statute is saying he's awaiting execution of his sentence? If awaiting execution of your sentence, that's the part I guess I'm questioning. So even when a defendant is sentenced, immediately sentenced, and allowed three months to go to surrender to prison, that sentence is final the day he receives the sentence. But during that three months, he's still awaiting execution of the sentence. So there's nothing inconsistent about that. And so that period of awaiting is however many years he's been serving, plus the supervised release, that's not a concern. His sentence has not been executed for the last however many years. I don't think it's a binary distinction that he's either serving the sentence or awaiting execution of the sentence because there are different components of the sentence. Can I just ask, sorry, just on this point, just looking at the text of 3143, it says who is awaiting imposition or execution of sentence. Do you understand awaiting, I'm not sure it matters, but to refer to both imposition and execution? That is to say, could it mean awaiting imposition? So one option is it means awaiting imposition or awaiting execution of sentence. Another is that it is awaiting imposition or execution of sentence. It seems to me if it's the latter, that fits more naturally with your argument. So we think that it is more consistent with this court's decisions and the Supreme Court's decisions that Mercado is awaiting execution of the sentence because we think that the sentence was imposed and was final ten years ago when it was originally imposed. So what remains is the execution of the supervised release portion of the sentence to the extent that now he's been alleged to have committed a violation and there are proceedings that need to happen to determine whether he's going back to jail for an additional time. That's the portion of the sentence that remains awaiting execution. But it only remains awaiting once the petition has been filed. That is our view of it, yes, Your Honor. Okay, thank you. Thank you, Your Honor. All right, good morning, Ms. Silva. Good morning. The Supreme Court tells us that the magnitude of a legal wrong is no reason to perpetuate it. For more than four decades, courts have assumed they possess the power to detain individuals charged with supervised release violations while awaiting adjudication of those violations. But that power does not exist. That power does not exist because Congress has failed to pass a law authorizing such detention. The Non-Detention Act is clear, and in the words of Justice Souter, severe in its tone. It states, no citizen shall be imprisoned or otherwise detained by the United States except pursuant to an act of Congress. The Non-Detention Act serves multiple key constitutional purposes. One is to safeguard the liberty interests of United States citizens. But another is to preserve the central role of the legislative branch, not the judicial and not the executive branch, in determining when a citizen should be detained. And that is why the Non-Detention Act requires nothing less than an express act of  The plain language of the statute applies to Mr. Mercado. He is a United States citizen. The government filed a motion asking that the district court detain Mr. Mercado and requested the district court grant that motion. And thus, the Non-Detention Act applies. There is no argument that I see against the application of the plain language of the statute. And indeed, any such argument would be foreclosed by Supreme Court precedent, which has clearly held that the Non-Detention Act prescribes detention of any kind by the United States. And that references... Just to make sure I understand. So, for defendants who are non-citizens, there is authority to detain pending a revocation proceeding? The Non-Detention Act would not bar their detention. And so, would there be authority to detain them pending a revocation proceeding? Non-citizens are, of course, entitled to due process rights. So, the protections they would be afforded would be synonymous with whatever... with the due process rights afforded by the Constitution. But would there be statutory or rule-based authority to detain them pending a revocation proceeding? I'm not talking about constitutional authority. Well, with respect to non-citizens, 32.1A6 might have some applicability. But that's not a question that's presented by this appeal because Mr. Mercado is a U.S. citizen. I'm just trying to understand what work the Non-Detention Act is really doing in the argument. Yes. So, the Non-Detention Act does a few things here. First, it requires statutory authorization, an act of Congress, and not just a presumption against detention. I think there are some references in the government's argument to some presumption about bail rules. I did not see this argument anywhere in the government's opening or applied briefs. I believe this argument is waived. But to the extent that it's not waived, the default rule of whatever courts might do in the face of parole or supervised release violations... Actually, I think supervised release, for that matter, is exclusively a federal invention. It just doesn't have any bearing. Some courts have noted, in the wake of the Mercado decision, that it would be a peculiar problem because 3606 allows a person on supervised release to be arrested, brought to court, you know, get an arrest warrant, you bring them to court, and under the district court's analysis, there would be no statutory rules to govern the release of that person. And what would a court do? Because if 3143A doesn't apply, the district court clearly believes it does not apply to a supervised release. There's nothing. So you have a person who's been detained, and what would the court do with that person? Well, the court does have power to modify conditions of supervised release, which could include things like GPS monitoring or other... But the person's entitled to hearing about that, too. You just can't modify without any basis, right? So let me just give you a hypothetical. You have someone who's absconded. They're not reporting their probation officer. They're looking for that person for a long time, six months. The judge issues an arrest warrant. You find this person, you can arrest them. They get the person, they come before the district judge or magistrate judge, and under the district court's view of the law, you have to release that person under no conditions, right? No, I don't believe that's the case. I believe that the district court would have the power to conduct the hearing there to modify conditions of supervised release to include a period of GPS monitoring, and the ideas of alternative forms of monitoring, or not incarceration, I'm sorry, but alternative forms of detention or monitoring, including specifically location monitoring. That doesn't help. There's a lot of domestic abuse cases where someone on supervised release gets arrested for domestic abuse, so putting them on home detention with a bracelet if the victim of the domestic abuse is in the home certainly isn't going to help alleviate the danger, right? District court would be powerless. But the state court is not powerless, and what you're speaking of is- The person's supervision in the federal court has an ongoing sentence, and a federal judge would have no power to protect the community. He would have to rely on the state court to protect the community, and that seems pretty strange. The district court could certainly order that the person abide by any protective orders put in place by the state court. Can I ask you about 3583E? Because I know in your briefs you argue that it only pertains to the burden of proof. It does not incorporate all of 32.1, but I'm not sure why we would view it that way when it broadly says pursuant to the rules, and as Mr. Chang noted, the statute has been reenacted. Detention has been part of that rule since the very beginning. It's switched section number. Why would we presume that Congress didn't need the entirety of the rules related to supervised release, but only with respect to the burden? Yes. Because there is no rule related to the burden. They were adding that pursuant to the statute, right? So what 3583E says is that the court may, pursuant to the rules of criminal procedure applicable to the revocation of probation of supervised release, fines by a preponderance of the evidence. So 3583E is talking about the revocation hearing itself and the rules that you're going to look to when you're determining whether someone has violated the terms of their supervised release to a preponderance of the evidence standard. But they wouldn't need to reference the rules at all then. They could just say, for revocation proceeding, you must fine by a preponderance of the evidence, like that the person committed the violation. That would be superfluous to refer to the rules if that's all that it was designed to do. Well, the rules contain some very specific protections that come into place during the revocation hearing. For example, the right to have witnesses present unless they're excused by the court for good cause, the right to a written record of that proceeding. There are other protections in Rule 32.1 that would apply to the revocation hearing, and those are the ones that are being referenced here with 3583E. I also think it's telling that Rule 32.1A6 doesn't cross-reference 3583E. It cross-references 3143A1, which suggests that that's the rule that the drafters of that particular rule of criminal procedure believe is what gives it the statutory authority to detain someone pending adjudication of a supervised release violation. Do you want to address the government's argument on that provision about awaiting execution of the sentence? Yes. First, 3143A1 specifically requires two things. First, that someone has been convicted of an offense, and two, that they are awaiting execution of a sentence. With respect to Perguero and Johnson and Heyman, those cases, to the extent they speak to this question, they only go to the question of whether someone has been convicted of an offense. They don't say anything about whether or not they're awaiting execution of a sentence. And I think it is very strange to say that someone is awaiting execution of a sentence when the only thing they're awaiting, at most, is potentially a revocation hearing. But not all violation petitions result in revocation hearings. Some are dismissed. Often they are dismissed where they are based on state charges that are nollied or dismissed by the state. Not every violation petition results in a finding of violation. And not every, even when there is a finding of violation, not every violation results in revocation or imposition of a carceral sentence. But if we understand the supervised release to be part of the sentence, then doesn't it relate to the execution of a sentence? The revocation sentence would, but not the revocation proceeding itself, because that's still a hypothetical at this point in time. And Mr. Mercado's case is a perfect example of that. The district court held the revocation proceedings in abeyance, pending the state court proceeding, and the government itself moved for a 90-day continuance to have the revocation hearing. It's still hypothetical whether we're ever going to have a revocation hearing in this case if those state charges are in fact nollied and if Mr. Mercado and the government does not seek to prove them beyond that. We did say in Figueroa, and there's another case, Billers, that suggests that this idea that supervised release is essentially a suspension of the execution of the sentence to allow the person to go out under certain conditions and have liberty. If that's the way it's thought of, why wouldn't the term awaiting execution of sentence naturally flow from that? Maybe that was a bad question. No, no. Awaiting execution of a sentence. There's something definitive about that language. There's nothing definitive about what is happening with Mr. Mercado right now. And again, we are not contending that the revocation sentence itself would not be part of the original sentence within the Perguero and Johnson line of cases. That is not at issue. It's a question of whether Mr. Mercado is awaiting execution of a sentence while he is still, before he has been adjudged to have violated the terms and conditions of the supervised release. I wanted to just touch on the double jeopardy argument briefly. I just want to be clear that it's a constitutional argument raised by the court, but it's only a constitutional argument when it's combined with the Non-Detention Act and the statutory framework that we're trying to kind of pigeonhole these supervised release violations into. Because we are now having to conceive of the revocation proceedings itself as part of the underlying sentence in order to satisfy the Non-Detention Act's requirement for statutory authorization under 3143A1, that's where we're getting to a place where we're saying that someone can be reincarcerated with no additional findings for the same offense. But with a different statute, that would not be an issue. All right. Thank you. Mr. Chandy, you have three minutes. Yes, Your Honor. I think I just have a few points that I wanted to respond to. The government's argument with respect to double jeopardy is that although Attorney Silver tries to cabinet, it really, the argument would apply not just to detention pretrial, but if double jeopardy is a valid argument here, and it's obviously not because of the court's precedence, then it would apply not just to the detention prehearing, but also to any kind of subsequent punishment and revocation that might occur, and that's been foreclosed. Attorney Silver also suggested that there couldn't be an awaiting execution in this case because there are different possible outcomes, perhaps the violation will be dismissed or there might not ever be a revocation hearing for one reason or another. But that doesn't change the fact that Mr. Mercado is currently awaiting execution of that portion of his supervised release, which is the consequences of having alleged to have violated his conditions of release. The fact that there are different possible outcomes below doesn't change the fact that he's still waiting for the execution of that part of his sentence. There was a question raised or a point made about the scope of incorporation, and I think that there's very strong textual support. I mean, leaving aside if you actually go back and look at the old versions of 32.1 that existed when the legislation was passed, but there's a very strong textual parallel between the language that Congress used, which was, you know, pursuant to the provisions of the Federal Rules of Criminal Procedure, applicable to probation revocation, probation revocation. And when you look at 32.1, there's a section A which says revocation of probation, probation, revocation, revocation, probation. And that's clearly what Congress was referring to, that section. They were not referring to just a small portion of that section. So that's the argument about some kind of a limited incorporation where Congress was only focusing on one sentence, where it was talking about the hearing itself. That just doesn't make sense when you look at the statute as compared to the rule as it existed at the time. And my final point, Your Honors, is that the Court has asked a couple of questions about the consequences of an arrest and district judges not having guidance about what to do in the event of an arrest. And questions about the consequences to non-citizens and possibly taking up the point that the government made in its brief that it wouldn't make sense to treat citizens and non-citizens differently. All of those points go to the idea that Mercado's argument and the district court's holding here just make no sense given the overall structure and purpose of the Sentencing Reform Act and the Bail Reform Act. It does not make sense that in this one small sliver of criminal procedure, a district court with a convicted defendant under supervision is just powerless to detain that defendant when there's a new allegation of a violation. It just doesn't make sense with the structure. It's clearly not what Congress intended. And with that, we would ask that the Court vacate. Can I just ask you if you know how many cases are sort of percolating with this issue now being raised? I think I counted nine district court judges who have disagreed now with Mercado. Do you have any idea how many other cases it's being raised within the circuit? I don't know, Your Honor. But I do know it's being raised by defense counsel in many other jurisdictions. I do know, for example, that there was recently a Third Circuit panel, not a decision that was published or anything, where the Mercado issue was the focus of the defense argument that the defendant should be granted bail, and the Third Circuit denied that in, like, a one-sentence order. It's interesting that I couldn't find any case. There are a lot of circuit cases, including Grady here, and it was one where Judge Nathan's on a power and a footnote cited the rule. But it's all presumed. Nobody, I think, has raised this issue, and therefore there's been no decision by any circuit affirmatively examining the authority. I think that is 100% correct. We've looked at it that exhaustively and have not found any other case that's questioned the authority of district judges with a defendant under supervision in the 40 years that the laws have been in place. Thank you, Your Honor. Thank you both for a reserved decision. Have a good day.